Our next case is Charter Oak Fire Insurance v. American Capital. Mr. Boustros? Mr. Boustros stepped out during the break. Oh, he did? He'll be back. He'll be back. Yeah, we'll wait for him, for sure. Mr. Boustros? Yes, good morning, Your Honor. Good to have you here. Thank you very much. May it please the Court. I am here on behalf of Travelers and Charter Oak, and I'm going to refer to them collectively today as Travelers. This Court should reverse the District Court's $87 million judgment for three principal reasons. First, the insurance policies expressly state that, quote, no person or organization is insured with respect to the conduct of any joint venture. And it has been undisputed from day one to today that all of the underlying liability originated from the Chinese joint venture and the conduct of that joint venture. Second, as the District Court expressly found, the parties did not intend that portfolio companies like SPL would be covered by the policy. If y'all were in the drafting business, why didn't you make it clear in the policy that it didn't cover portfolio companies? Well, Your Honor, it was a form endorsement that referred to majority interest that had been used with other policies. But as the District Court found, American Capital did not intend to purchase insurance for SPL or its portfolio companies. Travelers didn't intend to provide that insurance. So it's clear, it's undisputed, there was no intent. And SPL is the joint venture? The SPL – I'm sorry, Your Honor. No, go ahead. I was going to say SPL has a joint venture in China. Has the joint venture. Yes. So it's CZ SPL that's actually the joint venture? Exactly, Your Honor. And the language of the contract is very broad. It says, any liability with respect to the conduct of a joint venture. And the Maryland courts have said that the language with respect to is extraordinarily broad, even broader than a rising out of. And this court in the Beretta case, Judge Wilkinson actually talking about a rising out of, said that's in Maryland particularly broad. I'm going to – I will ask probably a number of questions. They're not leading questions. They're not trick questions. I just found this to be very complex. So just assume that I'm seeking information. As I read it, the joint venture exclusion would – or the district court found that it would bar travelers' duty to defend SPL on any theory of liability where the suit was based on CZ SPL sourced contaminated heparin. Is that correct? That's correct, Your Honor. Okay. And indemnification is not in front of us. But at least with respect to coverage once it has been determined that the contaminated heparin was sourced through that joint venture. That's correct, Your Honor. So actually it appears that the district court did recognize the joint venture exclusion. Yes. The problem as you see it, if I am understanding correctly, is that the district court said, yes, I recognize that the JVE exclusion bars travelers' duty to defend once it has been determined that the source of the litigation is CZ SPL sourced contaminated heparin, but we do not know that at the outset. Because at the outset it was not clear that all of the contaminated heparin was sourced through CZ SPL. There was some question about whether it was also sourced through Wisconsin. Is that correct? Yes, that's where the district court invoked the potentiality rule because some of the lawsuits were silent with respect to where it was sourced. Most of them did indicate on their face that they were sourced from China. Right. But some of them did not. And as I understand it, and do please correct me if I'm wrong because I'm just confirming my understanding. Yes. But the district court said that where it is unclear as to the source of the heparin, it nevertheless invokes travelers' duty to defend because of the potential of coverage. Is that correct? The district court found that if it's unclear as to some of the complaints, if it's silent as to some of the complaints, then the court held there's a potentiality for all of the cases, even where it was clear in the cases. Okay. Thank you. That was the next part of my question because I got a little confused between getting the point. One of the things I don't understand, and I will ask your colleagues on the other side as well, when did it become clear that all of the administered heparin, contaminated heparin, was sourced through CZ SPL? May I walk you through the chronology on it? Because it really, from in April 2008, SPL's president and CEO, Mr. Struntz, testified before Congress that all of the heparin was from China. And then in the MDL in July 2008, the plaintiff's lawyers, and this is in our briefs, but I can give you the record sites, they indicated that their theory, this was the consolidated cases, it was heparin from China. The date being what again? July 2008. So this is before American capital has made any sort of insurance claim. And then in the, I'll jump ahead a little bit, but in the January 16, 2009 letter from travelers to American capital denying the duty to fan and coverage, it said this was all from the joint venture, asked American capital for additional information if they had it wrong. American capital not then, not any time after, not today, never denied that all the heparin was from China. And then just two more points. In the discovery, in the litigation, in February 2009, SPL provided discovery responses that showed that all the heparin lots, except for two, were from China. But there's also in the record, and two others were potentially from Germany, but they knew, and this is in the record, that by 2008, September, that those lots had been captured by the recall and were administered by patients. So American capital, the insured, knew September 2008 at the latest. And then finally, in the litigation in the MDL in September 2010, SPL produced documents that indicated that those two lots that weren't from China had been recalled and had not been administered to patients. So at the very latest, it's September 2010. And that's with respect to the silent suits. So you don't object to the district court's conclusion that travelers would be liable if there were a question as to whether the source of the contaminated heparin was from China, if it were unclear, or if it could not be determined from the face of the suit. So you understand, I mean, you're not taking issue with the district court in that regard, are you? We take issue to this extent, Your Honor. In Maryland, unlike some jurisdictions where the undisputed, extrinsic evidence beyond the complaints indicate that an issue as to who is the insured, indicates that someone is not an insured, that extrinsic evidence can be taken into account. We've cited the Lowell case from the Maryland Court of Special Appeals, the Baltimore Gas and Electric case, the Springer case says that if it's not an issue that's going to be at dispute in the lawsuit, then it can be considered. But, Your Honor, if the court, at a bare minimum, as of September 2010, in the court records, in the lawsuits, it was undisputed. And, again, American Capital today, and the district court found, does not dispute that it all came from China, and that was clear in the underlying litigation. They don't take issue with us on this at all in September 2010. But the district court allowed them to get damages five years forward after that, and showed this was from the joint venture. That's one of the fundamental errors here. And not only that, Your Honor, as we've laid out, American Capital SPL had entered into this secret agreement without consent from travelers. Yes, I understand. And the remedy that you sought for that was rescission, and the district court said that that was just a bit too drastic. We sought two remedies, Your Honor. First, there are two issues on the rescission, but also the other remedy is just allocation of the damages. So, here, the judge awarded the full $64 million. It's really pretty remarkable. The $64 million in damages plus pre-judgement interest. Did you offer any expert testimony, or for that matter, any testimony to help the court out with your claim as to how much it should be reduced? No, Your Honor, but it was the burden of the plaintiff to put on an expert or a lawyer to demonstrate which continental casualty case from the Maryland court says, and all the Maryland courts say it's the burden of the party seeking fees and damages to give a reasonable basis for damages, much less complicated cases than this, and expert to explain which fees were necessary, which related to American Capital. That's the only insured on the policy, which related to SPL, but the court gave. Well, and SPL. We believe it's not. I understand, but your argument about SPL goes to the total ownership. Is that correct? And that language just isn't in. I couldn't determine that that language was in the policy. And that is where we ask for reformation. You seek reformation, but that requires mutual mistake, and that's a harder. For purposes of my question. I understand, Your Honor. I hear where you're headed, but let's put that issue aside. But I do think it is in terms of the overall result here, even if the court doesn't accept the reformation argument. Yeah, let's keep SPL in. Let's keep SPL in. So then the question is, what would the defense costs have been defending American Capital and SPL? SPL. Not Baxter, a third-party pharmaceutical company. Yes. I will be asking about that because I don't quite understand that one either. Yes. Well, I'll start to describe it, and then you can ask me any question that hits you. So the parties under the agreement, the insurance policy, any voluntary payment or voluntary obligation required the consent of. Consent beforehand. Exactly. That wasn't done. It was concealed. I don't think there's any dispute about that. There's no dispute. So the agreement, and as we'll see from our briefs, everybody, SPL, Baxter, and American Capital realized they didn't actually have insurance for these claims. Well, CNL, right? Yeah. They had some insurance. And then Baxter hadn't insured SPL, but it was. It was capped. Exactly. And American Capital had a consultant find, quote, a loophole. Then they came up with this agreement that somehow purports to put travelers on the hook for a third-party Baxter's defense costs without any explanation, without any evidence, without any testimony from an expert, from a lawyer, or anyone explaining how that could possibly be. And it's completely inconsistent with the insurance agreements, which only covered certain parties. American Capital, even if SPL. Baxter Health Care is not covered under these policies. And so on the damages issues, that's the fundamental question that we've raised. And it was the burden of the plaintiff, and Judge Floyd, it really, you know, it's like a contract damages case. They didn't put an expert on. Normally, you'll see in the Maryland cases we cite, much simpler cases. You put an expert on. There's a 12-factor test in Maryland about when the fees were necessary. And the district court found that because there was MDL, the court could just assume that all the fees would have been expended by American Capital because all the cases were together. And there's just no evidence of that. And if I can give you an example, we've cited in our briefs the bellwether cases that were tried, the first two. Both clearly involved and only involved the CZ SPL, China-sourced heparin. So there was no duty to defend at all for anybody. Then the cases all focused, and these were the biggest expenses and fees. They focused on the individual injuries to the plaintiffs, which were not common to all the cases. Yet Travelers is being required to pay Baxter's expenses with respect to those cases. There's just no support for that. It's clear legal error. It's clear factual error. The trial judge said these cases were so inextricably intertwined that you ought to be on the hook for all of it. And there's no factual support for that error. There's no testimony. You'll note that there's no cite to any evidence. There was no lawyer from Kirkland & Ellis who handled the cases, the lawyers who handled it, someone else about the agreement testified. And I think the amici make the strong argument that finding it simply because there's an MDL, an insurer is liable and has a duty to find every single case. Is there a legal basis for that kind of – I mean, I didn't find any support. There was no – You could assign liability for the entirety of the amount because it's an MDL. There's no legal support, no cite, no case has ever held that. In Maryland law, the continental casualty case and the other cases we've cited, so you have to look to find it covered if it's a covered suit and a covered insured. Here we have uncovered suits and third parties. Baxter can handle itself in terms of its insurance. And I don't want to go too far, but that agreement in American capital, once they had the agreement, it sort of laid down as we've laid out in our briefs. Instead of filing motions to dismiss, it just stayed in the cases and told the judge don't worry about it in order to put the insurance hook on travelers. Thank you. Thank you. And I hope I have some time for rebuttal. Thank you very much. Thank you, Your Honor. You saved some time. Thank you very much. Mr. Schreiber. Good morning, Your Honors. I'm John Schreiber. If you'll please the Court, I was trial counsel for American Capital at the long trial below. And so after American Capital purchased a products liability policy and travelers promised a defense against all product suits, the day came that a series of suits were brought. Mr. Schreiber, the problem I have is not with respect. It's the scope of the damages, I think, that are at issue, not the fact thereof. So is there any dispute, or at least for purposes of my question, at what point did it become clear that all administered heparin was sourced through CZSPL? It was clear after we got to all the underlying cases were completed, which was before 2017. Obviously, suits were being filed right through and after 2010. Not all of the suits even referenced on their face. It was clear on the face of the suits that the heparin at issue wasn't Chinese-sourced. The contaminated, some of it, a lot of them they were, and some of them they weren't. And I thought it was a lot earlier than 2017. Yeah, 2017. But I can go back and look in the record. Yeah, there are suits that are coming in from 2008 all the way until 2014. My question is, at some point, I think, everybody sort of agrees that all of the contaminated heparin came from CZSPL, right? That's true. Regardless, so it doesn't matter for purposes of my question when the suits were coming in. The question is, at what point was it clear that the liability was CZSPL and not some other source? It would have been, well, it could not have been clear other than by looking at each individual plaintiff. Right. Which you couldn't do until all of the suits were in. Or it had been resolved because all of the parties recognized that all of the contaminated heparin came through CZSPL. One or the other. Your Honor, you would have to trace that to an individual plaintiff to know whether that lot that was administered to that plaintiff. Not once it was determined, after it was determined that all of the contaminated heparin came from CZSPL. And that's one of the things that the district court, I think, got, the district court said, and recognized that the Joint Venture Exclusion bars travelers' duty to defend on any theory of liability where the suit was based on CZSPL source-contaminated heparin. So even the district court did recognize that limitation. Subject to the definition of Changzhou in page 20 and page 3 of the opinion. Can you let me ask my question? Yes, I'm sorry. I'm really not arguing with you. Yeah. As the district court recognized, the Joint Venture Exclusion does bar travelers' duty to defend some of these suits. And it is not, it doesn't have a duty to defend where the suit clearly wasn't based on CZSPL source-contaminated heparin, because CZSPL was the joint venture that was excluded by the express terms of the policy. Are you asking me, Your Honor, to respond to that, agree with it or disagree with it? Well, actually, I was reading the, I had read the language of the district court. So it would be, I think, hard for you to disagree with what the district court found. Well, Your Honor, with all respect, on page 24 in the summary judgment opinion, the court said there'd be no duty to defend where there is no potential that the complaints allege conduct separate from the joint venture. Right. And, of course, there were multiple claims in all of these suits. And their common claim in all of these suits was conduct separate from the joint venture. And Chong Zhou, it's very important to note that at page 3 of the summary judgment opinion. What other joint venture was at issue here? There was defined Chong Zhou as a joint venture of which SPL was a member. And I heard Mr. Boutros said SPL had a joint venture. SPL was never a member of the joint venture. And the court clarified its summary judgment opinion right before trial. And this is at Appendix 2-012. She said, court clarified that the duty to defend is not turned on, quote, whether there is any JV heparin involved. And travelers took a different position in front of the court at that time. In its brief, which can be found at 2-003 in the joint appendix, it said, the summary judgment opinion, before it was clarified, even then did not hold the JV involvement without more, would trigger the clause even if that were a feature of every case. And the reason for that is that the very construct of this joint venture statement that the court is making is travelers represented to the court that SPL was a member of the joint venture and that all of this conduct that occurs after the joint venture, it passes through the joint venture, is mitigation of SPL's own conduct as a joint venturer and therefore isn't independently actionable. But all of the conduct that is post-joint venture is independently actionable if SPL is not a member of the joint venture. Do you perceive yourself to be answering my question or are you making a general argument? I'm trying to respond to the Chong Zhou joint venture question, but I want to do it in reference to how the court defined Chong Zhou in making any statement about sourced from a Chong Zhou. Because that would make the conduct, according to the court's definition, the conduct of SPL as opposed to a third-party joint venture. And, Judge, it's our position that under this court's interpretation textually of the joint venture clause, which is a de novo issue, it cannot be interpreted to refer to some causal link between a third-party joint venture and American Capital, which isn't a member, or SPL, which isn't a member. I'm prepared to deliver an argument on the textual. I did have a question about Baxter. CPL had insurance, did it not? And the proceeds were assigned to Baxter? That's correct. Okay. And why would Travelers or Charter Oak be liable for that, for anything to do with Baxter, which was not a party? Help me understand Travelers' responsibility with respect to Baxter. Okay. This goes back to what Judge Floyd pointed out, was the inextricable intertwinement of all of these cases. Cases were not billed on a suit-by-suit basis. They were billed on a service-by-service basis. And in the Trice-Geary case, this court dealt with a similar situation. There were three different lawsuits that had been brought in different courts, and the court considered them all together for purposes of the duty to defend. Was the district courts entitled to so find or so conclude inextricably intertwined? Oh, yes. There is much information in front of the district court that would allow for that. They had all of the various underlying complaints. They had the Johansson judgment, which establishes what facts needed to be found for liability to attach. Nothing about Shonzo is needed to be found. Did the district court offset the amount of proceeds that CPNL had assigned to Baxter? Did what offset? I'm sorry, Your Honor. Did the district court offset the amount of insurance proceeds that SPL had assigned to Baxter? No. Why would that not be, why would that be, again, why would that at least not be a double recovery and not reasonably paid by travelers? The amounts that were pledged by SPL and American Capital was compensation for a financing arrangement, just as if you went to a bank. This was the consideration. Insurance proceeds? Insurance proceeds was something that had value to Baxter, and that was something because they were cash poor that they could pledge to Baxter in order for Baxter to finance the bills as they came in that were incurred after the denial of coverage for SPL and American Capital and Baxter. The district, but it was money that, it was insurance proceeds. It was a value, an insurance proceed that SPL assigned to Baxter, which would have seemed to not be travelers' responsibility. Well, I don't doubt that it had value, but that's rather beside the point as far as my question is concerned. I'm not sure what your question is, Your Honor. I'm sorry, I'm just, I'm not sure of your exact question. I'm trying to understand why there's other insurance coverage here. SPL had insurance coverage, did it not? SPL had insurance coverage. And it assigned the proceeds of that coverage to Baxter, did it not? Yes. Baxter repaid itself out of those proceeds for the amount it advanced to cover the amounts incurred by SPL and American Capital and Baxter under a joint defense. Which was never, which involved the acceptance of an obligation, which was a breach of the insurance contract that SPL entered into without the consent of travelers. There was a breach because the, it was the basis of travelers' rescission claim, that the insured was not, could not enter into any agreement or incur any obligation without notifying travelers. Correct? Well, there would be yes, and that would mean there would be no coverage for any amount that you incurred in order to enter into that contract. But the law is very clear, the Baker's Express case and the Sherwood Brands case, upon which the district court relied in its 2016 opinion, that a pre-denial agreement for the payment of future legal fees cannot forfeit post-agreement defense coverage, where the later denial of coverage is based on the underlying complaints, which of course travelers received before this agreement was entered into. And so Sherwood Brands says the denial relates back to when the original complaints were noticed, and the CSA therefore doesn't prevent travelers from defending. Travelers' refusal to defend is based on circumstances long predating the CSA, which is the allegations of the complaint. If they had answered, if they had given their position right away, they would have said there's no coverage, and then an agreement would be entered into. But there is no forfeiture of later occurring defense costs in a defense procurement agreement under Sherwood Brands and the Baker's Express case. And I didn't mean to suggest to the contrary. I'm simply trying to figure out Baxter's entitlement. Okay, let me, I can, now I got it. Okay, so, Your Honor, there is an insuring clause in this contract, which is for insured contracts between an insured and its indemnity that predate the injuries, and that is exactly what existed under the 2004 supply agreement that Baxter had with SPL. That was an insured contract. The policy then invites, if you have an insured contract, invites the indemnity and its indemnitor, SPL and Baxter, to enter into, if they can get a conflict wave, into a unified defense, because that will save everyone money, and it's under the supplementary payments clause. And so the CSA also say the coverage is provided so long as there is no other insurance available to that organization. And there was no other insurance that could take priority over the primary policy. But that's not what it, all I'm saying is there was other insurance available. It wasn't available. It's not available. Then how can the proceeds be assigned? Well, they can be assigned because they can become later available over time. But because the insurance of travelers is under the excess clause in the traveler's policy, traveler's coverage comes first. There's a pecking order. And at that point, the SPL policy is treated as excess policy under the excess clause that is in the SPL policy. And did they ever become available? Well, in a sense, they never did, only because the indemnity limits were never reached because they never paid any indemnity under the traveler's policy. Right. Indemnity isn't the issue, though, isn't an issue here, though. Is it just the duty to defend? No. We have a cross appeal on indemnity. The court denied our indemnity claim on the pleadings on the theory that we didn't plead that, and that's part of our cross appeal, as well as the bad faith. But in terms of the Baxter part, Baxter is an indemnity of an insured. On the issue of SPL, again, SPL is not the JV, and it doesn't have a JV. And I think that's very important because all of this relates to the notion, the assumption that travelers argued on summary judgment, that the reason that this clause applies is because SPL is a member of the joint venture. That was not true. And that the joint venture was the active participant in the supply chain to contaminate the product. And if that had been true, and it was not true, the court found it not to be true. In addition to finding that this was not SPL's joint venture. If that had been true, then one's own subsequent failure to mitigate one's own active misconduct would not have been separate conduct. But now it comes out that SPL determined at trial and also admitted before trial that SPL was not a member of the joint venture. We are talking totally about third party conduct. And I think it's very important to note that this clause cannot be looked upon as a clause that is a liability causation clause. And the reason for that is. I don't have any other questions. I mean, I think I understand that. If you can finish what you were saying, if you need to wrap up. Yeah, I'm sorry. I just wanted to make clear that I appreciate your response, and thank you. You have answered, I think, my question. You saved some time on the cross appeal. I did. Yes, sir. All right. Mr. Boutros. Thank you, Your Honor. Let me start with the last points that counsel was making about the relationship between SPL and CZ SPL. Counsel is not correctly stating what the argument is. Our argument is not that they had to be a member or that they. That's not the argument. The clause at issue, which counsel didn't mention now, they don't even quote the joint venture clause. It says no one is insured with respect to conduct of a joint, the conduct of a joint venture. So it's the broadest but-for causation test imaginable. The only basis for liability in the underlying lawsuits, only the underlying lawsuits for American Capital or SPL, was the conduct of the Chinese joint venture. That's the end of the story. And, Judge Duncan, with your question, again, on the timing, counsel jumped around a bit there, but on pages 13 of our opening brief in 18 and 19, we walk through the undisputed timeline of when it became clearer and clearer and clearer that all the heparin came from China. Yes, 2010, September, SPL admitted it in discovery. And do you have a record site for that? I do indeed, Your Honor. The summary of all the record sites, page 13 and pages 18 and 19 of our brief, but in the record, Your Honor, if you look, the discovery responses are at JA 2493, 3393-3419, 3420-21. Those are the documents that confirm that those two German lots were not, they were recalled. And then also in February 2009, the discovery responses there, JA 4139-41 and 4142-49. And then one more, SPL told the FDA in September 2008 that the German lots had been recalled before they were administered. That's at 2795-2805. So it's absolutely clear. And counsel says, well, more lawsuits could have come in. Well, if a lawsuit came in and it indicated that there was a source other than the joint venture, then a duty to defend may have arisen under those circumstances. You can't just lump them all together. And that, just on Baxter, counsel, it's not just the reimbursement of insurance proceeds. Baxter's lawyers were given control without traveler's consent. I mean, law firms would love this if their clients were able to say, we're going to have a third-party pay. We're just going to dump the billing documents on the court. Baxter's lawyers ran the case. Baxter was given control of the defense, not travelers. Was this Kirkland and Ellis? Yes. And the only – You're challenging the reasonableness of some of these attorney's fees, too. Yes. And what – Judge Chasno awarded $64 million. What do you think the reasonable number is? Well, I don't think that the plaintiffs gave the court a reasonable way to calculate it because they just put in all the fees. Pardon me? I'm asking you what you think the reasonable number is. Well, I think in these circumstances, if I had been representing SPL and American Capital, I would have been in a joint defense group, and it would have been vastly less. But that's – okay. I think the question is – and I had this question also. They have put this before the district court. Surely you had some obligation to rebut that by saying specifically whatever. I mean, I would like to be able to have Kirkland and Ellis represent me, too, and I can understand that perhaps you're chafing a bit at the selection. But what specifically did you present to the district court to allow her to parse – to allow the court to parse those bills? Really, the travelers stood on the fact that they had not met their burden. And I do want to make clear that's not our main argument is picking through the fees. This is a much bigger problem. Baxter was not insured. These are mainly Baxter's fees. They shouldn't have gotten anything. Exactly. Or nominal. But you're saying also – and you used six or eight pages of your brief to say the fees were too much. You're overcharged. I just wondered how much you thought you were overcharged. You don't know. I don't know. You're overcharged. But I can give you – I can narrow it down, Your Honor. You do know they did the work. Shouldn't have been charged anything. Or at least it should have stopped in 2010, in September at least, when it was absolutely clear there was – that Heparin was all from the joint venture and the duty to defend ended. The Baltimore Gas and Electric case makes clear that once it becomes clear, even if there was a duty to defend, that's the cutoff. So fees up to 2010 only with respect to covered parties. So Baxter's fees would have to be excluded. And with respect to the suits that – even giving them the silent suits, only the fees on those suits. It was – and, Judge King, it was the – I know this – I'm sorry I have a broken record, but it was the plaintiff's burden to put on an expert, to walk through the standards. They didn't do any of that. You're saying that she was wrong. She erred in making the approximately $64 million award. I just wondered what you thought the right number was. And you don't have a number. I don't have a number, Your Honor. But Maryland law doesn't require an expert. A trial judge can rely on detailed billing statements, can't he? That's – there's no bright-line rule, Your Honor. But the courts do say there's a – you know, this multi-factor test. The patient's first case, which was the Maryland Court of Appeals' most recent case, says that there has to be at least some evidentiary basis to give the court a predicate for making a determination. And I go back to the point that I'll give – you know, if we say – She did have billing – the district court had billing statements and knew that work was done. At least that they were – the lawyers completed – we don't know if those bills were paid in full, if there were deductions made. There was no testimony from anyone that those fees were reasonable. And my key point here is there was no testimony that – from anybody that those fees related to American Capital and SPL and the covered time periods. And I'll just – if I can make one more point on this indemnity provision that counsel cited and the supplementary payments. That – Red light, you know. You know what I mean. Your Honor. I'll give you another ten seconds to wrap up. I'll take ten seconds. That provision explicitly required all sorts of consent from travelers, which was never sought. Thank you very much. Thank you, sir. Mr. Robert. Your Honor, I did not hear Mr. Boutros argue good faith or the duty to indemnify points expressly. I do think, though, I owe it to the Court to point out that when you asked Mr. Boutros about this evidence that was admitted in the coverage action regarding the timing of the discussion regarding where the source of Heparin came from, he gave you some citations. The record citations he gave you were to documents that were not admitted into evidence in the coverage proceeding. And they are 3383 and 342253. So they were not part of the trial record. If there's any questions the Court has, I'm here to answer them. Appreciate it very much. Thank you. We'll come down and greet counsel, and then we'll go to the next case.
judges: Robert B. King, Allyson K. Duncan, Henry F. Floyd